## Teague v. Commonwealth.

November 19, 1948.

Pentecost & Dorsey for appellant.

A. E. Funk, Attorney General, and John Kinnaird, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, Joe S. Teague, was indicted, tried and convicted in the Henderson circuit court on an indictment accusing him of receiving stolen property knowing it to have been stolen and his punishment fixed at one year's confinement in the penitentiary which is the minimum punishment for that crime, as provided in section 433.290, KRS. His motion for a new trial relied on these grounds: (1) That the verdict is contrary to the evidence; (2) the admission of evidence offered by the Commonwealth over his objection and the rejection of evidence offered by him; (3) error of the court in overruling his motion for a peremptory instruction of acquittal, and (4) "that the court erred in the instructions given to the jury and by failing to instruct the jury as to the whole law of the case." The motion was overruled followed by this appeal.

Grounds (1) and (3) are each based upon the contention that the evidence of the Commonwealth was insufficient to sustain the verdict of guilty, and they will be considered and determined together.

The indictment charged that Maurice Bentley was the thief who, in connection with one Osburn, broke into the store of Taylor Bros, Inc., Henderson, Kentucky, on the night of Sunday, November 9, 1947, and feloniously

took therefrom "several men's overcoats, suits and pants of the value of $200." It was further alleged that Bentley thereafter sold his half of the loot to appellant, who at the time knew that the property had been stolen. Bentley, his wife, and Policeman Wood were the only witnesses introduced by the Commonwealth, the latter being only a character witness who testified that the reputation of appellant for morality was bad.

Bentley in his testimony supported the charge in the indictment of his participation in the stealing of the property from the store of Taylor Bros. He furthermore testified that he carried his portion of the stolen property to his home and put all of it between the mattress and springs of a bed in his home and that on the 11th or 12th of November (he not being positive as to either date) following the breaking into the store on Sunday night, he went to the V. F. W. Club Room in Henderson for the purpose of contacting Teague or Pie Keene to whom he had been directed by others, in order to dispose of the stolen property. While there he did contact the appellant and Keene. He told them he had "something" he wanted to sell them and they agreed to go to his home and did so in Teague's car with the view of purchasing the goods by either of them, jointly or singly, and that when they arrived they were shown the stolen property; that appellant then and there offered to give him $35 for the property, which he accepted. He further stated that Teague paid him the $35 and left with the goods. He furthermore testified that the Taylor Bros. tag mark was on the clothing, but he did not testify as to the value of the stolen property purchased by appellant. Witness testified, as did his wife, that she was present throughout the time that appellant and Keene were at his home where the transaction was completed. Mrs. Bentley corroborated in toto the testimony of her husband as to what transpired on that occasion. She was then asked what was said about the merchandise, to which she answered: "He (appellant) told him (her husband) that he would take the clothes, that some he had got like that some he had got caught and some he hadn't." (Our parenthesis.)

Defendant and Keene each denied all of the testimony given by Bentley and his wife as to their visit to the Bentley home, and also any contact with Bentley at

the time he stated or any other time. In addition, appellant relied on an alibi, attempting to show by himself and wife his whereabouts on the evening of the 11th and 12th of November at the time testified to by Bentley. But the alibi testimony as a whole is by no means conclusive so as to effectually prove that defense, which has frequently been said by courts and text writers to be one that is "easily made and difficult to disprove." Besides, the alibi testimony was directed exclusively to the whereabouts of defendant on *only* the 11th and 12th of November when Bentley was not absolutely positive that the sale of the goods in the manner stated occurred on either of those two days.

The foregoing testimony of the Commonwealth, if believed by the jury, was and is sufficient to establish all of the facts necessary to prove guilt of defendant of the offense with which he was charged, i. e., that the property was stolen and that appellant received it and, as we conclude, was also sufficient, as hereinafter shown, to support the verdict finding such facts to be true.

The other essential facts to support the verdict of the jury are: (a) that the defendant knew the goods to have been stolen at the time he received it, and (b) that the aggregate value thereof was more than $20 so as to make his crime a felony instead of a misdemeanor. We will dispose of these two facts together.

It will be remembered that the indictment stated that the stolen property so received by appellant was of the value of $200, and the court instructed the jury that before they could find defendant guilty of the felony charge they must believe, not only that the property was received by him with the knowledge that it was stolen, but that its market value at the time was worth $20 or more.

The law recognizes two classes of proof by which a disputed issue may be determined, which are: express testimony and circumstantial testimony, and it has frequently been held that circumstantial testimony may be more convincing than express testimony. The circumstantial testimony as to the knowledge of the appellant that the goods were stolen is to be drawn from the character of property involved, its quality and kind and the common knowledge of its market value as measured by

the prevailing economic conditions at any particular time. In this case the property consisted of about three suits of men's clothing, three or four men's overcoats or topcoats, and a number of men's trousers. Such knowledge is practically conclusive in this case that under the prevailing conditions at the time (November, 1947), the property received by defendant, if he did so, and which the jury believed and was justifiable in doing so, was worth more than $20. All of it was tagged with the labels of the dealer from whom it was stolen, thereby furnishing strong convincing evidence that it was new and not secondhand. That conclusion is reinforced by the fact that appellant agreed to and did pay therefor $35, as based on the testimony of both Bentley and his wife, and also by the above statement of Mrs. Bentley as to what appellant said when he purchased it.

The case of Henson v. Commonwealth of Kentucky, 242 Ky. 90, 45 S. W. 2d 855, 856, is one where the facts (except the character of property involved) were almost, if not entirely, parallel with those in this case. The property there involved was the stealing of chickens, the value of which was more than $2 which subsection (4) of section 433.250, KRS, makes a felony. The court in that case did not submit to the jury by its instructions the crime of petit larceny if its members believed that the value of the chickens stolen was less than $2. In disposing of that issue we said:

"At least 13 chickens were stolen and there was no reasonable room for a difference of opinion as to their value. The uncontradicted evidence respecting the value of the stolen chickens being to the effect that they were worth more than $2, it was not necessary or proper to instruct the jury on petit larceny. Divine v. Commonwealth, 236 Ky. 579, 33 S. W. 2d 627, Goodin v. Commonwealth, 235 Ky. 349, 31 S. W. 2d 380."

Compare also cases cited in the notes to section 925 of Stanley on Instructions to Juries; Smith v. Commonwealth, 284 Ky. 169, 144 S. W. 2d 215, and Gray v. Commonwealth, 288 Ky. 25, 155 S. W. 2d 444.

By way of illustration suppose that the property charged to have been stolen was two or more hogsheads of tobacco, or a diamond ring and a diamond necklace, when at the time both classes of property commanded a

high price on the market. It would then be folly to contend that the value thereof was less than $20, but on the contrary that it was of the value of more than that sum. We conclude that the illustration is applicable to the facts of this case and that none of the errors relied on for a reversal of the judgment are sufficient for that purpose.

Wherefore, it is affirmed.